Good morning, your honors. Allison Mills on behalf of Akein Scott. This appeal asks what is fair... You do a lot of these volunteer things, don't you? Yes, your honor. Well, this is a CJA appeal. Yeah, I know. Not entirely volunteer, but I enjoy it. This appeal asks what is fair in plea negotiations. The late, great Judge Alvin Rubin was also a scholar on the subject of negotiations. And Judge Rubin actually argued that in every negotiation, the lawyer owed a duty of fairness to the other side that ought to supersede the lawyer's duty even to her own client. Now, that noble view has not always prevailed, but it is assumed that the government must operate that way. The Constitution, the Bill of Rights, due process jurisprudence, all require fairness even when it impairs the prosecutor's ability to obtain a conviction. You did not recommend representing Mr. Scott in trial. No, your honor, I did not. The government does not defend its conduct in this case as fair. The government said one thing pre-plea, did another post-plea at sentencing. And the government's position is fair or unfair, that's just the way that it is. The government gets to change its mind. I'd like to address... Negotiations were ongoing. There never was a definitive, we will not use this testimony. Your honor, I disagree. Negotiations were not ongoing. The investigation was ongoing. Investigation about the other murder. But importantly, timing is important, the government admits it did not discover anything new. The circumstances did not change post-plea. And I'll go over the facts. That was DNA evidence. That was before the plea. The DNA, they told Akeem, there's no match. We're going to keep investigating, but there's no match. We don't intend to use it. Nothing changed after Akeem plead. Plead. Plead. Sorry, entered his plea. And I'll go over the facts briefly because the facts... Before you get to the facts, even if it's troubling and even if that position seems stark, what's the legal remedy? The guidelines commentary seem to be the strongest for you, but those aren't binding. And then they point out in the 28-J letter that no matter what someone says, a prosecutor still under 36-61 would have to give this to the probation department, so the court's got to find out about it anyway. I don't think that the government can hide behind that. We don't disagree that the government has a duty to disclose to the court relevant conduct evidence. But let's bear in mind here that the government made a representation to Akeem. We won't use this evidence at sentencing. That induced Akeem's plea. Right. After that... I guess what I'm really looking for is what's your cleanest argument for any type of relief. Are you saying this is a Santabella breach, even though the plea on its four corners was met? Are you saying there is a due process discovery violation here? Or are you saying it was involuntary for anything other than the defense attorney's ineffectiveness? Or is there a third? What's the case that gets you relief? I think the best case for us is the unpublished decision of the Fourth Circuit in Normal. I think that that court... Government says this is a stipulated amount, and then they argue for more. Correct. Now, we don't have a stipulation in the plea agreement here. Within the four... You mentioned the written agreement. The four corners of the written agreement. But this court's precedent is clear that, unlike a contract for a plea agreement, you can look to, and you should look to, the negotiations surrounding... I have a lot of problems with that. You're going to have to give me a good case. I will. When the plea terms aren't themselves ambiguous, and in fact, your predecessor negotiated there is no side agreement, what case says we still look to extrinsic evidence contrary to the sworn agreement to that? In our briefs, we cite the case of Kirk. And I actually went back and looked at Kirk. This court has cited Kirk twice for the very same proposition. Now, in the typical case, there is no other record evidence of the party's understanding besides the written agreement itself. But this is not the typical case. Every case that ends in a plea has months of negotiations. We may dismiss, we may do that, all sorts of ups and downs. It can't be that the defendant, after pleads and sentences, says, well, on this day, you promised this, and you didn't deliver. But in the typical case, you don't have an agreement in the briefs, the government agreeing that, yes, we did discuss these things. Yes, we did say it's not a match. Yes, we did. Well, ineffectiveness is important, too. In spite of all those discussions, whatever I thought, I'm now signing a plea agreement that says there is no other agreement. Well, and we have an ineffective assistance counsel claim, too. For ineffective assistance of counsel— Why didn't your client move to revoke the plea? I'm not sure why the counsel at the time decided not to do that. I will say that there's no dispute that counsel raised her objection several times. There are actually four places in the case, and it was clearly a breach of our understanding, and it rendered my assistance ineffective. Therefore, the plea was not voluntary or knowing. So let's say a prosecutor does say, we don't yet have it, but we're continuing our look. And then they just forget, because there is no discovery rule. Then you would agree, probation can call the FBI agent and say, I want to see your whole file, and then they have a duty to tell the district court about the murderer. So it's going to happen anyway. Whatever inadvertence has occurred before. No? Intent, whether it was good faith or bad faith, whether I just forgot, doesn't matter. What matters is fairness, and that's an objective standard. Would you say it clearly? Okay. Well, the point is fairness. Here, you made a representation. Maybe you didn't mean to say it the way you said it, but you said it. And everyone agrees that the defendant relied on it. No one says that the defendant's understanding was unreasonable. You know, when you change your mind or you find out some new information. Well, the defendant didn't really rely on it, because when he gets to rearrangement and he signs the documents, it says there is no other. There's no other side agreement. And it says you're exposed to any relevant conduct. And that gets back to, I think, for purposes of determining what the reasonable understanding of the agreement was. So it all turns on — You can look to discussions. Get relief at this stage as opposed to ineffectiveness. It all turns on Kirk being on point. Kirk is on point. And the two cases that rely on Kirk for that same proposition state that the court may and should look to discussions surrounding the plea negotiations. That's — fairness is so important in plea negotiations. We do not treat the plea agreement the same way we would a contract. In a lot of other respects, we do. But you are not limited here to the four corners. There's nothing that stopped predecessor counsel from trying to contest the preponderance evidence that came, right? So there's no suggestion in this record that once sentencing got to what it got to, he had every opportunity to say, the evidence doesn't show beyond a reasonable doubt I should be tagged with the murder. I'm sorry. Whether to contest that the evidence is unreliable? Yeah. Or just say it doesn't meet the preponderance standard. Correct. Correct. But I want to summarize the facts, because I think it's important that the facts here are not in dispute. And that gets to the — Well, I have a fact that's in dispute, because you have said that the government never obtained any more information about the murder of Gould. And in their brief, they say this decision followed new statements from a cooperating witness made just a few days before the rearrangement that further inculpated a cane and two of his brothers. Okay. That was before rearrangement. That was pre-plea. Well, it doesn't say that they necessarily knew about it, because it could have been a cooperating witness in some other investigation. Well, you know, we don't. We don't know. That is one fact that is not perfectly clear. But we know that it's this witness McCaskill. I'm sorry? I thought we knew about this, that the statement by the — At sentencing, we — Yeah, no. So we do know what happened. Eight days before the guilty plea, they speak to cooperating witness McCaskill, who said, oh, the reason you didn't have the Gould murder tied up was because he used my gun. I gave him my gun. Then it all makes sense. So they've an eyewitness who explains the ballistics. So why isn't that Mr. — the prosecutor at the beginning says, we didn't have a DNA match. We may not have it, but we're going to keep looking. Then they look, and then all of a sudden, McCaskill makes it all make sense. They don't make a contemporaneous statement, oh, we still won't present it. It really could be they've now just got that crucial piece of evidence, at which point there wouldn't be misleading. The issue would just be, do they have a duty to disclose at that moment? I don't know that they have a duty, freestanding, independent legal duty, to disclose relevant conduct evidence pre-plea. But I do think that once you have made a representation, and you know that the defendant's relying on it, you have a duty to correct the misunderstanding. Judge Clement pointed out that Simultaneous was saying we don't have the matched DNA match. They did say, we're still going to keep looking. So — They said, we don't intend to use the evidence at sentencing. Okay, they don't intend to use it. There was lots and lots of evidence, as you know, because you've obviously looked at this closely. They had lab reports, expert reports. They had 911 calls. They had hundreds of pages of discovery, all of this, before they got the witness statement. We could debate whether the witness statement was really a change in circumstances, even. But my point is, because they found this witness statement pre-plea, they had an opportunity to correct the misunderstanding, and they did not. Correct. And that is unfair. But the Supreme Court said the prosecution has no duty whatsoever to tell the defense anything about, you know, sentencing. Sentencing evidence. Right. Right. We do not — we do not debate whether there is a freestanding legal right to relevant conduct evidence. We don't. Our position is that once the government — Gives you anything, it has to give you everything. It doesn't have to give us everything, but it has to correct a misunderstanding, when it is the source of the — There was a misunderstanding because the agreement spoke for itself when it was in writing. But the written agreement itself is not the sole source of the party's understanding. The government does not dispute that Akeen's understanding of the deal was reasonable. You had here, Akeen accepted responsibility for five shootings. And the government says, well, what about this Gould murder? And Akeen says, I've never seen that man. And the government shows him some evidence. What about the judges? I mean, I realize it doesn't figure directly. But, you know, if you vacate a plea agreement, then what do you get? Well — Trial. In this situation, if you agree that there is breach, or even if you agree that there's ineffective assistance of counsel, if you — you get the choice of specific performance of the plea you bargained for, or you can choose to withdraw your plea. And in this instance, if he withdraws his plea, he goes to trial. And you know what? If you're facing life, there's nothing to lose. Well, and the judge — we know — we know the first option that you mentioned is really not palatable because the judge said he'd sentence him the same way, with or without the Gould murder. The resentencing would be before a different judge. Why? Because that's the law. In fact, this court just last — last year in Williams — Why? I mean, is that the law? I don't see why. Resentencing. When you get specific performance post-plea breach, you get resentencing before a different judge. No, you don't. I don't think that's right unless — That's Williams. That's Williams. I have the case site. That's if there's a Santabella breach. Yes, sir. Yes. We're not quite there. If you find a breach of the plea agreement, the defendant has the option to either choose specific performance or withdraw his plea and go to trial. If he seeks specific performance, he gets resentencing before a different judge under Williams. And if he goes to trial, that's before the same judge but with a jury. Now, for ineffective assistance of counsel, actually, the remedy should be tailored to the case. And the authority for that is the United States Supreme Court's opinion in Cooper. We have very little time. Could you — are you — when that comment by Judge LaMelle about, well, life anyway — That's not right. Does that or doesn't that make any error harmless? It does not make the error harmless. In fact, there's no harmless error for the breach of a plea agreement. That's consistent with Santabella. This Court held so in Valencia. This Court reaffirmed in Purser. And most recently, last month, in a case called Kirkland, this Court reacknowledged that. There is forfeited error. There is cured error. Just with your time running out, you were just asked a little bit about there's no duty to give pre-plea sentencing evidence. Do you concede that the Ruiz decision said that? That which decision? That the government has no duty to give any category of sentencing evidence. When you — do you — are you — I'm not prepared to say I fully agree with that. But I don't — that's not our position. We're not disputing that there's no freestanding, independent legal right to sentencing evidence. Sentencing evidence, okay. Thank you. Okay. You have rebuttal time. Mr. Sandman. Morning, Your Honors. May it please the Court. I'm Jeff Sandman for the United States. So did you have evidence? Did you find additional evidence later in the jeweled murder, post-plea, post-rearrangement? Your Honor, we did. And again, I want to stick to the record where possible. And when I'm leaving the record, I'll ask the Court's permission to do so. And this is one such occasion where I'm leaving the record with the Court's indulgence to demonstrate that we, in fact, did develop additional witnesses after the plea in this case. Did you put them on in the sentencing hearing? They were put on, Your Honor. There was a sentencing hearing, sort of doubled as both a sentencing hearing and a trial of the gold murder. Exactly, a trial of the gold murder. There were victims offering essentially victim impact statements and witnesses there, fellow gang members of the Scott brothers, testifying to the Scott brothers, in fact, bragging about their role in the gold murder. So it was sort of a hybrid hearing. But these witnesses, whether they were identified before the plea, I'm not sure, and that's not in the record, Your Honor. But it certainly is the case that they were, new lines of testimony were developed. They were worked with as witnesses. The final decision to present them certainly came after the plea. And that's, I think, what's lost in a lot of this, Your Honor, is the role of intent in this case. Rule 16, discovery obligation. Wait, this line, exchange, seems to me to be different than the position you took in the brief. So the government's position is factually, whether the record states it or not, that you never developed the evidence to reach a preponderance to present it until after the plea? Your Honor, our position on appeal is that the decision to present this as relevant conduct evidence came after the plea. That's correct, Your Honor. Okay. I thought that, I thought at sentencing hearing, the following was said. Based on that, McCaskill, that's what led us, Your Honor, to the point to present it. That's Record 554. So, Your Honor, that's correct. And McCaskill was interviewed on September 1, and the plea is on September 9. Eight days in advance, Your Honor. That's correct. But if you're accepting that, then you've just contradicted what you said. The prosecutor stated at sentencing, we decided to present it eight days before the plea. I don't think so, Your Honor. I think the evidence was, the witnesses were understood, the amalgam of the government's evidence was essentially known before the plea. The decision, however, of the government to present this murder did not come before the plea. In fact, it couldn't have come before. What's the record support for us to be able to state that? Your Honor, there's very little, and that's what's difficult about this, because it concerns... But still, I mean, obviously, if the record could allow that, that's much more comforting to me. My discomfort with this case is that we would ever assert a rule of law that would say the government can know of relevant conduct evidence, but simultaneously tell a defendant to plead guilty, having said we won't present that. We don't have it. So my question is, are you saying that that is permissible as a matter of law for the government pre-plea to say, defendant, we've got 922G proof, that's what you're pleading to, but then withhold the fact they know at sentencing they're going to dump a murder on the guy and prove it only to a preponderance and get life? Would that be a legitimate legal position for the government to take? With the caveat, and I must take it, Your Honor, that I don't believe those are the facts. Okay, with that caveat... Since when is the government ever allowed to make a deal with the defendant that hides information from the sentencing court? Never, Your Honor. Well, the government could agree to an 11C1C, then the district court gets it all and they would have money. But if you could answer my question, if you can answer my question... Your Honor, sure. My question is, if the government is in negotiating and the defendant says, I won't plead if this comes in, and the government... It's not a question of disclosure. It's a question of, can the government then say, I don't have that now, without then revealing? So it isn't a question of disclosure for me. It's a question of, can the government make that assertion about evidence it knows it has? Your Honor, I believe so. Again, with the caveat that I don't think that's what we have here in the case before us, I believe they can. There's no freestanding duty to disclose relevant conduct evidence. And essentially what I believe Your Honor is asking is, is a duty essentially created when the government opens its mouth in the first instance and discusses the possibility of... Guideline commentary, even if it's not binding, does encourage that any evidence relevant to sentencing get disclosed. It does, Your Honor. There's also case law from United States v. Johnson is the case I'm thinking of. It's an Eleventh Circuit case from 2015, in which the Eleventh Circuit recognizes that an obligation to inform the defendant of all the facts that could be used to enhance a sentence would, and I'm quoting here, would be overly burdensome on the government and would undermine the goals of the court. You cited Baer and Johnson from the Eleventh Circuit, but you didn't cite the Supreme Court Ruiz decision, which is the court that the Johnson unpublished plain-error case cites right after the portion you quote. That's right. So you're not telling us Ruiz's authority for this proposition. You are telling us Johnson and Baer. But am I correct about Johnson and Baer? In Baer, the government didn't have the information. Is that true? Yes or no? That's correct. Okay. And in Johnson, it's a plain error, and there is no allegation that the government stated that it didn't. That's my concern. Is that correct? That's also correct. Okay. So you don't have authority from the Eleventh Circuit. You arguably do from the Ruiz decision, but you didn't cite it. And I want to know why, because I have concerns about Ruiz extending to this position. Well, again, insofar as Ruiz stands for the proposition that the government doesn't owe — Owe what? That's the crucial thing. Owe what? How do you read Ruiz? I read it as the government doesn't owe a criminal defendant the responsibility to turn over this material. Well, you say this material, but Justice Thomas dissented, right? And in that case, he said the majority seems to be saying you don't owe them impeachment material for the crime they're charged in. Why? Because defendants know what they're charged in. I couldn't find a case that extends Ruiz to a situation where the government has relevant conduct the guy wouldn't know from the indictment that will decide life pursuant to guidelines. But, Your Honor — So my question is, is there any case that extends Ruiz to government doesn't owe any sentencing as opposed to what it seems to me to apply to government doesn't owe charged crime evidence because he knows what he's been charged with? Judge, I don't think it requires extending Ruiz. If that case exists, I'm not familiar with it. I don't believe we need that case extending Ruiz. Well, why didn't you cite Ruiz then? I believe I cited it in a parenthetical as cited by another court. I didn't — You didn't mean to not to. I didn't mean to not to.  But I think the standards from this Court and the prevailing standards from other courts and appeals across the country simply don't impose a duty on the government to disclose relevant conduct information. And I hear what Your Honor is saying — Even if your government says something like, and we won't present it, that's the twist in this case. Your Honor, when you look at the particular doctrines undergirding the three issues on appeal, whether there's a breach, whether there's knowing involuntary I do think there's a role for it, perhaps. I think it would be easier for this Court to find that a promise was, in fact, created if the prosecutor was deceitful or was knowingly withholding information. I think it might be easier to find involuntariness. How do we write — let's say you're right, we affirm, but what's the limiting principle? What's to stop the government from even — forget they even said the word, and it's ongoing. They just said, we don't have it and we won't. But the record reflects they do. Is there any limiting principle in the law? I think the limiting principle is there, Your Honor, is probably on those two — those two components. Whether there was a promise, I think the Court could read — I know there's absolutely in this circuit and elsewhere a possibility for a good-faith breach. That it happens, the Court can find a breach despite an absence of bad faith, I guess is what I'm saying. But it's — What about the Kirk decision she's heavily relying on? The Kirk decision, in fact, went the other way. I mean, in the district court, ultimately ended up receiving the benefit of a hearing. But ultimately, the Fifth Circuit recognized that the defendant entered into a plea agreement because of the evidence that was stacked against him, and in fact, that the government never made the promises that the defendant, in fact, asserted that the government made. So I'm surprised that that's the hook on which defendant Hengser had. Your Honor, again, in the opening, Ms. Mills explained that, you know, fairness is the name of the game in this case. But fairness goes both ways. And here, Keene-Scott's asking the Court for a benefit of a bargain that really just wasn't made. Obviously, before there can be a breach, there has to be a promise. And in this case, at no point did the prosecutor make a promise. Is it at all ambiguous, the plea agreement itself, when — No. — in the following sense? There was a lot of relevant conduct evidence identified, but not this. So wouldn't the defendant have thought, oh, well, this factual basis lists relevant conduct, and it doesn't list exactly what the prosecutor said they wouldn't present. Therefore, my understanding of the agreement is there is no other relevant conduct. Judge, we can talk about ineffectiveness, but that's not — not proper here. That would be subject, you know, more appropriately to 2255. Well, they're telling us it is proper. You're saying it's not. You're saying — I'm not saying it's not. Well, I think — unless I'm mistaken, an issue before us is a suggestion of ineffective assistance of counsel. You may be saying we should put that off. I think unless there's compelling evidence in a robust evidentiary record, I think ineffective assistance claims are best handled in the first instance in the district court on the 2255. But the defendant certainly didn't move to withdrawal. Never moved to withdrawal, Your Honor. They did sign a plea agreement that seems to, on its face, to contradict what the defense attorney was told. Absolutely, Your Honor. That sounds close to ineffective. I think you're right, Your Honor. If this Court is willing to engage with the ineffectiveness argument, I think — I think we win on it. You win on it? I think we do. I think the worst-case scenario for the — I don't see how we can possibly engage in effectiveness without hearing the lawyer's precise testimony. This whole thing sounds very screwball to me, that the attorney insists on, you know, keeping something out of the sentencing proceeding for a fellow in a gang who's got five shootings and somehow the sixth is going to make the difference. I — It sounds like the tail wagging the dog on its face. But maybe, you know, maybe there really was such a misunderstanding. Perhaps it is, Judge Jones. And those are facts that, of course, can be developed below. And they don't exist here. And rank allegations of either trial counsel or appellate counsel about what the client might have done is not a stand-in for testimony in the district court. So insofar as what communications happen between trial counsel and Mr. Scott, or insofar as what the trial counsel might have done is not a stand-in for testimony in the district court, I think there is a little bit of play in the joints about the government cannot withhold facts from a sentence in court. The government, however, is bound to its obligations that it makes in a plea agreement with respect to, for example, the — you know, it's urging a guidelines enhancement or a rule reduction or a particular guidelines range. So I think where we end up in sort of the interplay between those things is that the government has — owes something akin to a duty of candor to the court to present relevant evidence of which it's aware. We have plain statements from the Casillas Court recognizing as much. And at the same time, the government can be held to its promises made insofar as what the guidelines — exactly what the guidelines range are, essentially discretionary things. Roberts. Because, again, I find that comforting. What's the best case? Would that only occur in a motion to withdraw the plea? Would the district court say, oh, boy, this is concerning to me, and under the car factors, if the government told you this wasn't going to happen, well, that AUSA didn't know about 3661, he couldn't tell you that. But if he did, and then you relied on it, we have a problem as to your voluntariness and maybe withdrawal. Is that how you see it all working? In other words, front end that didn't happen, correction, or way back end, ineffectiveness, but just not the situation we're in here, is that what you're saying? I'm sorry, Judge. I'm not trying to be difficult. What do you mean? I'm accepting your proposition that it's improper for a prosecutor to say we won't present it. They can't say that under the law. But let's say they do say it because they want that plea. And imagine even nefarious. They want a plea to a little crime knowing they can get them on a preponderance standard to murder life that they couldn't approve beyond a reasonable doubt. If that happens, you were just trying to tell me there is a correction. And I'm asking you, is the correction the front end, that motion to withdraw? I believe it is, Your Honor. But there is no Santabella-type correction on direct appeal once you've pled with an agreement that says there's nothing else. Absolutely not, Your Honor. Santabella was a case in which the breach, it was a breach of a promise made in the plea agreement. We don't, we have a plea agreement very plain on its face. There's not a single ambiguity in that agreement. Your Honor, just a moment ago was discussing, well, maybe the ambiguity, in fact, is the fact that the factual basis lays out a bunch of other offenses. Your Honor, the factual basis, it's axiomatic in this Court that the factual basis is not the only document or the, does not lay out the only facts that may be relied upon at sentencing by a sentencing judge. In fact, investigations often remain ongoing even after a defendant pleads guilty. Such was the case in this case. An alternative rule would require an investigation essentially to end at the moment of a rearrangement. And again, the process . . . I think that whole line of authority, to me, is crystal clear. You're exactly right. The only overlay that isn't right is you can't mislead a defendant. That's, that's the issue in this case that's difficult for me. Of course the government can't limit what the district court's going to get. And any defense attorney would be ineffective to say it can. But the trouble is when the government tells the defendant, plead to this, we don't have and won't present. And that's how you described it in your brief on page 6. You said that the prosecutor told him, I won't present evidence of the murder. That seems to me, your description of what the prosecutor did, seems to me in violation of the law requiring him to present it. Your Honor, I don't want to fall back on Blackledge as a backstop here. The Blackledge, that solemn declarations in open court carry a strong presumption of verity. I, I, I, but, but I do. That may be the fallback. That's just saying even if all sorts of mess happened before, you didn't agree to it at rearrangement. I do, your Honor, think it's important. What, what is the purpose of a plea colloquy if not to get the truth out of a defendant under oath? And with the Court's indulgence, I would like to go through a little bit of that plea colloquy because it's, it's robust. The defendant swore that he viewed the plea agreement with counsel and that he understood promises. He was advised that anything anyone told him about sentencing is not binding. He was provided a summary of the plea agreement. Very critically, he was advised that the only enforceable agreement with the government was what was stated in that agreement. And the defense attorney just stands silent? Stands silent, your Honor. Well, the defense attorney did say something. And at 313 in the record, she says, I've gone over the plea agreement with him, Akeem Scott. I've gone over the charges. I've gone over the sentencing guidelines. I've explained to him what it merely, what is merely advisory. As your Honor has explained to him, I believe he understands all of that, and I believe that the plea is in his best interest. This comes true, but that factual basis lists pages and pages of relevant conduct, but not the one she thought. That's correct. That's correct, your Honor. But the thing is, I mean, I agree with you. We can't do harmless error, but does the gold murder make a difference between a potential life sentence and not a life sentence? In this, if you take Judge LaMelle at his word, it did not. But I mean, even in strict terms of what the man pled to. Oh, yes, your Honor. His guidelines was going to be, his guidelines with the gold murder was life. His guidelines without the gold murder maxed out at 210 months, but he was pleading guilty pursuant to charges that carried 20 years of mandatory time. So really, the floor. Five shootings. Exactly, for five shootings, your Honor. One of which was the Mother's Day shooting, which for the New Orleans judges in the room, and I'm sure for the Houston judge as well, again, it remains with us. So the government got him an incredibly unjustly sweet deal. I wasn't the prosecuting attorney. It was a sweet deal. It was a sweet deal. Without the gold murder, this was a sweet deal. He was looking, again, at a mandatory minimum of 20 years in prison and got... But how does that cut? That means, oh, wow, if it were nefarious, they'd be thinking, let's give him a deal he can't refuse. But then when we get to sentencing, we'll get back everything we wanted to get. Judge, if there was something nefarious happening there, I agree that cuts against us. That's not the case here. I know it's not the case, but how do we write a rule that makes sure that could never happen? I think the rule, again, the role that intent plays in this, it's sort of an unspoken boogeyman because it doesn't appear in any of the doctrinal tests we're looking at in any... But I think you can read it in. I do. I think, again, if this court is looking for a promise as a prerequisite to finding a breach, I think it would be reasonable for this court to interpret the government's good faith or bad faith in recognizing whether a promise was made. When we're talking about, there was some action in the reply brief. My feeling about this is a contract is a contract. The writing is on, you know, why should it be treated any differently than any other contract? If he thinks the basis of it was fraudulent inducement, which is basically what he's arguing, then he should have moved to revoke the plea, period. Your Honor, I... But once you've pled, been sentenced, pled, played the game, it's too late. You can go after your counsel in a 2255. Your Honor, I agree with you. And I just, again, want the court to recognize what the facts are below. The only representation as to what the government promised comes at pages 902 and 229 in the record where Scott's lawyer below writes that the prosecutor said he didn't intend to present the Gould murder, and now I quote, but qualified the statement by stating that he could not guarantee that they would not garner more evidence as the investigation progressed. For me, Your Honor, it's case closed. That's his counsel acknowledging that. That's his, this is from the mouth and the pen of his trial counsel. I think the case begins and ends there. Your Honors, I see I'm out of time, unless there are additional questions, ask the court to affirm the conviction. Thank you, Your Honor. Your Honor, the government agrees that there's nothing in the record that would indicate that they found out any new information post-plea. And the government agrees that it said what we say the government says or said. The government says, well, but maybe it was just a good faith breach. You can look to the government's intent here, and no one has said that the government acted in bad faith. That's correct. I have not asked the court to infer from these facts any ill will on the prosecutor's part, but I don't think intent should matter. Intent does not matter, for instance, for a Brady violation. It doesn't. I don't know how you can deal with intent in this situation, because it's all off the record. I don't think intent should matter. I don't think it matters whether this was good faith or bad faith. What matters is that it was unfair. So much then comes down to, in my mind, Judge Jones's question a minute ago, which is the plea is the plea is the contract. And you say Kirk says that's not so. And I just have to reread Kirk. I'll quote it for you. That makes a bright-line rule. It could allow for whatever misstatements are made in plea discussions. This is from Kirk. A court's inquiry regarding whether a particular promise induced a guilty plea does not necessarily end with a reading of the written agreement. Evidence of discussions surrounding the negotiations of the written agreement may establish the existence of a promise. And this court has cited Kirk twice. In Wallace, that's Anne Moreno, both unpublished opinions, 160 Federal Appendix 382, 32 Federal Appendix 126. It would only apply if the plea itself is ambiguous. That's not my understanding. I mean, pleas are different than contracts, respectfully, Judge Jones. We require that the government do things fairly. You have a plea colloquy hearing. And at the plea colloquy hearing, you explain. And then it wouldn't have been an untimely motion to withdraw the plea had he, before sentencing, counsel finds out they're going to offer the ghouled murder after all. Certainly, counsel could have done that. Counsel did not. Counsel did saw no benefit. You asked, you know, how, I'm sorry, Your Honor. You asked, how do we write this? And I think the key is timing does matter, right? But the government's now begun its oral argument here saying, in fact, timing was post. They only got, they only developed the intention to present it post. Well, I don't know how that plays out. It doesn't matter what they intended. They owe it no matter what. Probation's going to get it. Timing matters. But to your, but to your point. Well, go ahead and answer. Her question's better than mine. Timing matters in what respect? When the government tells the defendant, you know, we've got some evidence, but we're not going to use it. That just sounds so wrong. They can't say that, but they said that. But that's what the government agrees that it said here. Well, I mean, doesn't counsel have an obligation to know what is improper and what's not? Well, I think this gets to trust. And this is why, you know, writing an opinion that says the government can't do this would be a good thing. The government's already given this fellow a real write-down on the charges against him as far as potential, you know, sentencing goes. Why they did that, who knows. But then they, I mean, maybe it was because they just wanted to prove up gold by preponderance. Maybe that was it. But, you know, surely the defense counsel has to be on notice that it is the court's duty to sentence on the basis of all irrelevant conduct. That's correct. And there could have been even less evidence offered of the gold murder, and the court could still have inflicted a life sentence. That's correct. But the difference here is that the government made the representation that we don't intend to use it. So you've got no case. A king entered a plea. But the defendant says, hey, what about the possibility of a gold murder? You're saying the prosecutor should say, that's your risk. And if the prosecutor had said that, everything's clean. It certainly would be a different case. I mean, we agree with, I mean. But instead he said, oh, the DNA doesn't match. That may have been a true statement. He said, but I'm going to keep looking. And then right before rearrangement, they get this flip. Maybe they're worried about these violent persons are going to kill McCaskill. They don't have a duty at that point, and the misleading isn't occurring at that point. But I think they knew, no one disagrees that Akeen's understanding was a reasonable one. And once you've made a misrepresentation, when you have new facts, you have to tell him in order to correct the misrepresentation. We don't know what Akeen's understanding was. We only know what, because he hasn't filed anything. We only know what his lawyer says she understood. Your Honor, I'm out of time. Answer the question. I think, though, that the record is pretty clear. I mean, the lawyer filed three different things in the record, and also spoke at sentencing and said that, you know, this was not a voluntary plea. I misunderstood the guidelines range here, and I gave him bad advice. I mean, if he had known that he was going to face a mini murder trial at sentencing, he would have gone to trial, because he would have had nothing to lose. But she never moved to withdraw the plea. She did not. You know, on the remedy, if you are interested, Williams, a case decided by this Court last year, 821 F. 3rd 656, and this was Judge Southwick. When the government breaches a plea agreement, a defendant has the right to have his chosen remedy accepted, either specific performance of the plea agreement and resentencing before a different judge, or withdrawal of the guilty plea. Thank you, your honors. Thank you. The court is in recess. Sorry.